UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Hearthside Food Solutions, LLC.,                     Case No. 3:13-cv-00294

        Plaintiff

  v.
                                        MEMORANDUM OPINION & ORDER

Adrienne's Gourmet Foods, et al.,

        Defendants

## I.  INTRODUCTION

Before me is the motion of Plaintiff/Counterclaim Defendant Hearthside Food Solutions LLC for summary judgment. (Doc. No. 54). Defendants/Counterclaim Plaintiffs Adrienne's Gourmet Foods ("AGF") and John O'Donnell have filed a brief in opposition. (Doc. No. 61). Hearthside has filed a brief in reply. (Doc. No. 63). For the reasons stated below, Hearthside's motion is granted in part and denied in part.

## II.  STANDARD

A district court shall grant a party's motion for summary judgment if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant may meet its burden by showing there is an absence of evidence to support an element of a claim on which the nonmovant has the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has satisfied its

burden, the nonmovant then must set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### III. BACKGROUND

O'Donnell and his wife Adrienne founded AGF in Santa Barbara, California, in 1985. The company initially specialized in a lavosh flatbread cracker, which it distributed to restaurants, hotels, and private clubs in Southern California. AGF subsequently transitioned into the product of private label organic cookies and crackers, which it produced, sold, and distributed to a number of national grocery chains. As this portion of AGF's business continued to expand, AGF entered into a co-manufacturing relationship with the Consolidated Biscuit Company ("CBC") in McComb, Ohio. O'Donnell developed formulas for the products and provided these formulas to CBC to manufacture the products and fill customer orders. (*See* Doc. No. 48 at 38-51).

In 2010, Hearthside acquired CBC's assets. While CBC previously had taken on the upfront costs of the materials, ingredients, and packaging for AGF's products, Hearthside shifted these costs to its co-manufacturing partners, including AGF. Hearthside also shifted the responsibility for packaging many of AGF's products back to AGF. To accommodate this change, AGF purchased a factory in Sandusky, Ohio. In combination, these changes caused AGF to accumulate an approximate $1,500,000 debt on Hearthside's books. While AGF was able to pay off this debt following Hearthside's demand for payment, O'Donnell testified this placed a substantial amount of

2

financial stress on AGF by exhausting much of the cash the company had on-hand. (Doc. No. 48 at 145-46). Additionally, Hearthside reduced the line of credit it extended to AGF from $1,000,000 to $350,000.

In 2012, AGF exceeded this credit limit. Hearthside determined AGF had to pay off the loan and that it would no longer extend credit to AGF. In order to pay off the balance, AGF and Hearthside agreed to temporarily transfer the right to invoice three products AGF sold to Whole Foods and Trader Joe's. Hearthside thus would receive payment directly from AGF's customers and agreed to apply the profits from these sales as a credit against AGF "aging balance." Subsequently, the two companies also agreed to transfer the right to invoice AGF's other customers to Hearthside. AGF and Hearthside contemplated that AGF would resume control over the right to invoice its customers after the aging balance was resolved. Though the parties differ on the reasons underlying subsequent developments, it is undisputed AGF did not reassume the customer accounts and ultimately ceased operations as a going concern.

### IV. ANALYSIS

Defendants jointly assert five counterclaims: (1) misappropriation of trade secrets; (2) breach of contract of bailment; (3) conversion; (4) unjust enrichment; and (5) replevin. (Doc. No. 14 at 14-18; Doc. No. 36 at 12-15). Defendants assert these claims in the alternative. (Doc. No. 61 at 24, n.5). Additionally, AGF asserts a separate breach of contract claim against Hearthside. (Doc. No. 36 at 15-16). After Hearthside filed its summary judgment motion, the parties stipulated to the dismissal without prejudice of the breach of contract of bailment, conversion, and replevin counterclaims, leaving the misappropriation of trade secrets and unjust enrichment counterclaims, as well as AGF's breach of contract counterclaim. (*See* Doc. No. 60).

#### A. MISAPPROPRIATION OF TRADE SECRETS

Ohio has adopted the Uniform Trade Secrets Act ("OUTSA") and defines a trade secret as "information, including the whole or any portion or phase of any scientific or technical information,

3

. . . process, . . . [or] formula . . . that satisfies both of the following: (1) [i]t derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; [and] (2) [i]t is the subject of effort that are reasonable under the circumstances to maintain its secrecy." O.R.C. § 1333.61(D). In part, a trade secret has been misappropriated if it has been disclosed or used by a person without the express or implied consent of the trade secret's holder and the person used improper means to acquire knowledge of the trade secret, or knew or had reason to know the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. O.R.C. § 1333.61(B)(2)(a)-(b). The OUTSA defines improper means as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." O.R.C. § 1333.61(A).

While the parties dispute whether or not the formulas are trade secrets, Hearthside is entitled to summary judgment on Defendants' misappropriation claim because Defendants cannot show Hearthside obtained the formulas through improper means. "There is no presumption any particular idea imparted to or acquired by an employee is a trade secret unless the possessor takes active steps to maintain the secrecy." *Water Mgmt., Inc. v. Stayanchi*, 472 N.E.2d 715, 718 (Ohio 1984). Defendants entered into a co-manufacturing relationship with CBC, and maintained that relationship after Hearthside purchased CBC, because Defendants wanted to use the CBC/Hearthside facility to produce products for their customers. In order to do so, Defendants had to provide CBC and Hearthside with the formulas for those products. While Defendants argue they shared only "limited mixing and ingredient information" and "[t]he bare minimum," it is clear that the only way CBC and Hearthside could produce AGF's products was through the exchange of highly precise information about the type, quantity, and quality of ingredients used in each product. There is no real dispute that Defendants in fact provided this information. (*See* Doc. No. 48 at 50-51 ("What [CBC] got was this is a formula, this is a mix sheet, this is how it is to be mixed, these are

4

the certificates on all the ingredients, and you cannot substitute this ingredient [for another] . . . . You have to put exactly what it says it is to be true to the formulation and to obey the FDA.") (emphasis added)).

Additionally, Defendants have not produced any evidence to show Hearthside breached any duty of secrecy concerning the formulas. The Letter of Understanding between AGF and CBC addresses only the business relationship between the two companies. It does not include any confidentiality provisions or mention the formulas used to make the products. (*See* Doc. No. 54-2).

Finally, the record does not show Hearthside disclosed the formulas to any third parties or has used the formulas in any way except the way the parties anticipated – to fill orders for AGF customers – and Defendants do not identify any evidence which could permit a reasonable juror to conclude Hearthside has misappropriated the formulas. *See Water Mgmt.*, 472 N.E.2d at 718 (former employee did not violate "even an implied duty not to disclose"). Even if I assume the formulas at issue constitute trade secrets, Defendants present no evidence the formulas were obtained through improper means, and therefore cannot prevail under § 1333.61 as a matter of law.

**B.    UNJUST ENRICHMENT**

A person or entity is unjustly enriched when the person or entity "retains money or benefits which in justice and equity belong to another." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). Unjust enrichment is remedied through an action for restitution, which a plaintiff may prove by showing (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) circumstances make it unjust to permit the defendant to retain the benefit without payment. *Id.* (citing *Keco Indus., Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 141 N.E.2d 465 (Ohio 1957) and *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984)).

Defendants allege they "conferred multiple benefits upon Hearthside, including but not limited to (a) the ability to manufacture product for AGF using O'Donnell's proprietary formulations; and (b) the ability to use the Loaned Equipment without charge to manufacture

5

product for AGF." (Doc. No. 14 at 17; Doc. No. 36 at 14). Defendants' apparent attempt to recast their allegations to state a claim for conversion of business opportunities, (Doc. No. 61 at 25), for the first time in response to Hearthside's summary judgment motion is improper and I will not consider this claim. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (a plaintiff may not assert new theories in response to summary judgment) (citing *Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005)). Further, as Defendants concede, to the extent their counterclaims set forth an unjust enrichment claim based upon Hearthside's use of alleged trade secrets, such a claim is preempted by the OUTSA. O.R.C. § 1333.67(A); *see also Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 922 (N.D. Ohio 2011) (OUTSA preempted unjust enrichment claim premised on same set of facts as misappropriation of trade secret claim).

Hearthside argues Defendants' unjust enrichment claim related to the Loaned Equipment fails because Hearthside has returned all of AGF's equipment and Defendants fail to show there was an agreement that they receive payment for the use of the equipment. Hearthside's arguments are not persuasive. First, Defendants' unjust enrichment claim deals with use of the equipment, rather than possession. The fact that Hearthside claims to have returned all of the equipment does not negate Defendants' claim concerning the period of time between transfer of customer accounts and the return of the equipment.

Second, Defendants do not need to prove the existence of a payment agreement in order to prevail on an unjust enrichment claim. *See Johnson*, 834 N.E.2d at 799. A reasonable juror could conclude Defendants conferred a benefit on Hearthside by loaning the equipment for use during manufacturing without charge, and Hearthside admits it used AGF's equipment to produce products to fill customer orders both before and after AGF transferred its customer accounts to Hearthside. Moreover, the record contains evidence that Hearthside filled orders for AGF's customers without applying the profits from those sales to AGF's aging balance or remitting the profits to Defendants.

6

(*See* Doc. No. 61-3; Doc. No. 48-35). A reasonable juror could conclude Hearthside was unjustly enriched by its retention of profits derived from the use of the Loaned Equipment following the transition of the customer accounts. Therefore, Hearthside is not entitled to summary judgment on this portion of Defendants' unjust enrichment claim.

C.  **BREACH OF CONTRACT**

AGF asserts Hearthside breached an agreement between the two companies to produce products for AGF's remaining customers – i.e. for customers other than Trader Joe's and Whole Foods – and to apply the profits from those sales to AGF's aging balance. In order to prove a breach of contract claim under Ohio law, "a plaintiff must establish the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of contract, and damages or loss to the plaintiff." *Andrew v. Power Mktg. Direct, Inc.*, 978 N.E.2d 974, 986 (Ohio Ct. App. 2012). Hearthside is entitled to summary judgment on this claim because AGF fails to identify evidence sufficient to establish an agreement existed between AGF and Hearthside concerning these remaining customers.

AGF asserts Jasper "represented that if any of the other AGF customers . . . were serviced by Hearthside during the transition period, the profit from those sales would be applied to AGF's aging balance." (Doc. No. 61 at 26). AGF then points a number of invoices from the fall of 2012 for shipments to these other customers and argues Hearthside breached the companies' agreement by failing to apply the profits from these sales to AGF's balance. AGF fails to show, however, that Jasper's representation constitutes an enforceable contract. O'Donnell testified Jasper told him Hearthside would agree to produce additional products for the Trader Joe's account but would not take on the smaller accounts. (Doc. No. 48 at 195-200). While Hearthside later began making and distributing products to fill orders on these other accounts, AGF does not offer any evidence of an agreement regarding the manner in which these accounts would be handled. AGF fails to show there was "a meeting of the minds" as to the terms of the contract, that the parties consented to the

7

contract terms, or that the terms of the contract were "definite and certain." *McSweeney v. Jackson*, 691 N.E.2d 303, 308 (Ohio Ct. App. 1996). Hearthside is entitled to summary judgment on AGF's breach of contract claim.

## V. CONCLUSION

For the reasons stated above, Hearthside's summary judgment motion is granted in part and denied in part. Hearthside is entitled to summary judgment on Defendants' claims for misappropriation of trade secrets and unjust enrichment related to the use of O'Donnell's formulas, as well as AGF's breach of contract claim. Hearthside is not entitled to summary judgment on Defendants' unjust enrichment claim related to the use of the Loaned Equipment.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge